**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 25 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

MERCER TRANSPORTATION
COMPANY,

        Plaintiff-Appellee,

v.

GREENTREE TRANSPORTATION
CO.,

        Defendant-Appellant,

and

McCLELLAN ENTERPRISES, INC.,

        Defendant-Third-
        Party-Plaintiff,

v.

LEROY LANXON,

        Third-Party-Defendant.

No. 01-1380

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 98-D-1387)**

James Attridge, Scopelitis, Garvin, Light & Hanson, San Francisco, California (Jerry N. Jones, Moye, Giles, O'Keefe, Vermeire & Gorrell, LLP, with him on the brief), for Plaintiff-Appellee.

Alan Epstein, Hall & Evans, L.L.C., Denver, Colorado (Anthony Melonakis, Sutton, Melonakis & Gulley, P.A., with him on the briefs), for Defendant-Appellant.

Before **MURPHY**, **BALDOCK**, and **O'BRIEN**, Circuit Judges.

**MURPHY**, Circuit Judge.

## I.  Introduction

Appellee, Mercer Transportation Co. ("Mercer") brought a lawsuit against appellant, Greentree Transportation Co. ("Greentree") seeking compensation for the contents of a tractor-trailer truck which were damaged in a one-vehicle accident.  The district court granted summary judgment for Mercer, concluding that Greentree was liable for the damage because its placards and other identification were displayed on the truck at the time of the accident.  The district court concluded that the liability issue was controlled by this court's holding in *Rodriguez v. Ager*, 705 F.2d 1229 (10th Cir. 1983).  The district court also granted summary judgment to Mercer on the issue of damages.  Greentree then brought this appeal.  Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we

-2-

**reverse** the grant of summary judgment on liability and **vacate** the district court's order granting summary judgment on damages.

## II.     Factual Background

On January 29, 1997, Mobile Tool International, Inc. ("Mobile") contacted Mercer, a flatbed carrier and licensed transportation broker, to arrange transportation for a load of six aerial lifts from Colorado to Massachusetts. The next day, Mercer brokered the load to McClellan Enterprises, Inc. ("McClellan"). Mercer's load quote/confirmation sheet designated McClellan as the carrier and Larry Lanxon ("Lanxon") as the driver. On January 2, 1997, however, Lanxon had entered into a leasing agreement with Greentree. Pursuant to the terms of this lease agreement, Lanxon permanently leased his tractor-trailer to Greentree and drove the equipment for Greentree. The parties dispute whether McClellan brokered the Mobile shipment to Greentree or made arrangements directly with Lanxon.

Mobile prepared a bill of lading associated with the shipment of the aerial lifts. The bill of lading was signed by Lanxon and the shipment was then tendered to him. On January 31, 1997, the aerial lifts were damaged when Lanxon was involved in a one-vehicle accident. At the time of the accident, the truck bore Greentree's placards which feature Greentree's name, logo, and license numbers.

Mobile filed a claim against Mercer for the full value of the damaged aerial lifts. Mercer settled the claim for $150,453.12. As part of the settlement, Mobile assigned to Mercer its right to pursue any claims against McClellan, Greentree, and Lanxon arising out of the loss of the property. Mercer then filed a lawsuit in federal court against Greentree and McClellan pursuant to the Carmack Amendment to the Interstate Commerce Act (the "Carmack Amendment"), 49 U.S.C. § 14706.[1] Mercer asserted three claims in its complaint. The first claim arose under 49 U.S.C. § 14706(a) and was asserted by Mercer as Mobile's assignee against both McClellan and Greentree. The third claim, a claim for indemnification pursuant to 49 U.S.C. § 14706(b), was asserted only against Greentree by Mercer in its individual capacity.

Mercer settled with McClellan for $82,988.54.[2] Mercer and Greentree then filed cross-motions for summary judgment with respect to both liability and damages. The district court granted summary judgment in favor of Mercer on the

---

[1]McClellan filed a cross-claim against Greentree and a third-party complaint against Lanxon. McClellan's cross-claim was dismissed by stipulation of the parties. McClellan's third-party complaint against Lanxon was dismissed by the court.

[2]In addition, Mercer assigned its right to pursue claims relating to the incident to McClellan's insurer, Albany Insurance Company (now known as Liberty Mutual Insurance Company). Although Mercer's right to pursue these claims has been assigned to Albany, Mercer and Albany further agreed to jointly prosecute the claims. The suit is being maintained in Mercer's name pursuant to Rule 25(c) of the Federal Rules of Civil Procedure.

issue of liability, concluding that Greentree was liable for the damage to the aerial lifts because Lanxon's tractor-trailer bore Greentree's logo at the time of the accident. The district court relied on this court's decision in *Rodriguez v. Ager*, 705 F.2d 1229 (10th Cir. 1983), as controlling precedent for its conclusion.

With respect to the issue of damages, the district court concluded that under the Carmack Amendment, a carrier's liability could be limited through tariff rates included in the bill of lading. *See* 49 U.S.C. § 14706(c)(1)(A). Although the bill of lading signed by Lanxon limited liability to Mercer's tariff rate, the district court denied summary judgment because a genuine issue of material fact existed as to whether Mobile had actual knowledge of Mercer's tariff rate. After the district court entered its ruling, the parties stipulated that Mobile did not actually know Mercer's tariff rate and then again filed cross-motions for summary judgment on damages. The district court granted Mercer's motion in part, concluding that Mercer's tariff was not binding. The court entered judgment against Greentree in the amount of $70,018.20. The amount of damages reflected the court's conclusion that Greentree was entitled to a setoff for the settlement payment made by McClellan to Mercer.

Greentree then brought this appeal arguing first that it is not liable for the damage to the aerial lifts and, alternatively, that either its tariff or Mercer's tariff should have been applied to limit the amount of its liability.

### III.    Discussion

This court reviews a grant of summary judgment *de novo*. *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).  We view the record in the light most favorable to the non-moving party and affirm when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1180 (10th Cir. 2002).

Mercer asserts that the district court correctly concluded that Greentree is strictly liable for the damage to the aerial lifts because its logo was displayed on the tractor-trailer at the time of the accident.  In support of this argument, Mercer relies on this court's decision in *Rodriguez v. Ager*, 705 F.2d 1229 (10th Cir. 1983).  *Rodriguez* involved a civil action seeking damages for fatal and nonfatal injuries suffered by the occupants of an automobile involved in a collision with a tractor-trailer truck.  *Id*. at 1230.  The truck had been leased to the defendant, a motor carrier, and at the time of the accident it bore the defendant's placards.  *Id*.  The driver, however, was not operating the truck for the benefit of the defendant and the defendant was unaware that the truck was being used to pick up a load for a third party.  *Id*. at 1230-31.

This court first discussed the regulations of the Interstate Commerce Commission governing leasing arrangements between interstate carriers and private owners of trucks used in interstate commerce applicable at the time of the accident. *Id*. at 1231-32. One of these regulations provided that the lessee of trucking equipment assumed complete responsibility for the control and use of the equipment during the term of the lease. *Id*. at 1231; 49 C.F.R. § 1057.4(a)(4) (1978). A second regulation provided that the lessee was responsible for removing its insignia and other identification from the equipment upon the termination of the lease. *Rodriguez*, 705 F.2d at 1231; 49 C.F.R. § 1057.4(d)(1) (1978). The court then examined congressional findings indicating that the purpose of regulating interstate truck leasing arrangements was "to establish responsibility for protection of the public in the lessee of the equipment." *Rodriguez*, 705 F.2d at 1232. The court concluded that Congress intended to eliminate "fly-by-night contracting" and a carrier's use of leased equipment to circumvent federal safety regulations by imposing responsibility for accidents involving leased equipment on the carrier whose insignia was displayed on the equipment at the time of the accident. *Id*. at 1236.

Consistent with congressional intent, the *Rodriguez* court imposed liability for the accident on the defendant because it had not removed its placards from the truck and, therefore, was irrebuttably deemed to be the lessee of the equipment

and the statutory employer of the driver.[3] *Id.* at 1236. The court acknowledged that the defendant's liability existed only by virtue of the leasing regulations. I*d.* at 1231. The court's interpretation of the regulations to impose liability on the defendant furthered "'the policy of protecting the public and providing it with an identifiable and financially accountable source of compensation for injuries caused by leased tractor-trailers.'" *Id.* at 1234 (quoting *Carolina Cas. Ins. Co. v. Ins. Co. of N. America*, 595 F.2d 128, 137 n.29 (3d Cir. 1979)).

Greentree argues that *Rodriguez* has no application in this case because it involves only damage to property and not personal injuries.[4] We agree. *Cf. Empire Fire & Marine Ins. Co. v. Guar. Nat'l Ins. Co.*, 868 F.2d 357, 363 (10th Cir. 1989) ("*Rodriguez* is instructive on the issue of a lessee's responsibilities to injured parties under ICC regulations, but it is not relevant to the issue of how liability should be allocated between two insurance companies, both of which arguably have insured the same event."). The holding in *Rodriguez* was clearly driven by this court's conclusion that the truck leasing regulations should be interpreted to protect members of the public who suffer personal injuries in

---

[3]The holding in *Rodriguez* is commonly referred to as the "logo liability" rule.

[4]Greentree also argues that amendments made to the leasing regulations relied upon by the court in *Rodriguez* call into question the continued viability of the logo liability rule. Because we conclude, *infra*, that *Rodriguez* does not control the disposition of this case, it is unnecessary to address this argument.

accidents involving leased equipment.  *Rodriguez*, 705 F.2d at 1236 ("Trucking equipment such as that here present has a capability for bringing about terrible injuries and damages *to life*." (emphasis added)).  The policy considerations that underlie the rule adopted in *Rodriguez* do not exist in causes of action brought pursuant to the Carmack Amendment.  Such suits involve only the issue of carrier liability for property lost or damaged in shipment; they do not involve personal injuries sustained by members of the public as a result of a driver's tortious conduct.  The leasing regulations relied upon by the *Rodriguez* court do not govern the imposition or allocation of liability for property damage under the Carmack Amendment.

In addition, the Carmack Amendment itself establishes a separate liability scheme, thereby rendering application of the *Rodriguez* rule to property damage cases unnecessary.  A shipper pursuing a claim under the Carmack Amendment is relieved of the burden of demonstrating which of several carriers actually or proximately caused the loss to the property.  *See* 49 U.S.C. § 14706(a).  Instead, the shipper establishes a *prima facie* case against either the initial carrier or the delivering carrier by proving: (1) delivery of the property to the carrier in good condition; (2) arrival of the property at the destination in damaged or diminished condition; and (3) the amount of its damages.  *Mo. Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 138 (1964).  The burden then shifts to the carrier to

demonstrate both that it was not negligent *and* that the damage was caused by an event excepted at common law.[5]  *Ensco, Inc. v. Wiecker Transfer & Storage Co.*, 689 F.2d 921, 925 (10th Cir. 1982).  The shipper's damages, however, are limited to the actual loss or injury to the property.  *See* 49 U.S.C. § 14706(a)(1).

"The purpose of the Carmack Amendment was to relieve shippers of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods."  *Reider v. Thompson*, 339 U.S. 113, 119 (1950).  This court has stated that the "principal function" of the Carmack Amendment "is to permit a shipper in interstate commerce to bring an action against the initial carrier to recover for damages to the shipment whether such damages occurred while the goods were in the hands of the initial carrier or connecting carriers."  *L.E. Whitlock Truck Serv., Inc. v. Regal Drilling Co.*, 333 F.2d 488, 490 (10th Cir. 1964), *overruled on other grounds*, *Underwriters at Lloyds of London v. N. Am. Van Lines*, 890 F.2d 1112, 1115 (10th Cir. 1989) (en banc).  Thus, a carrier can be held liable to a shipper for damage to cargo without regard to fault.  Because the Carmack Amendment permits a shipper whose property is diminished or destroyed to recover its actual

---

[5]This includes damage "caused by (a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods."  *Mo. Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 137 (1964) (quotation omitted); *see also A.T. Clayton & Co. v. Missouri-Kansas-Texas R.R.*, 901 F.2d 833, 834 (10th Cir. 1990).

damages from a carrier without demonstrating actual or proximate cause, there is no need to extend the logo liability rule to suits brought pursuant to 49 U.S.C. § 14706(a).  The interests of shippers are adequately protected by the liability scheme set out in the statute itself.

If a carrier is held liable to the shipper under § 14706(a), it may, in turn, seek to recover from the carrier whose negligence caused the loss.  49 U.S.C. § 14706(b) ("The carrier issuing the receipt or bill of lading . . . or delivering the property for which the receipt or bill of lading was issued is entitled to recover from the carrier over whose line or route the loss or injury occurred . . . .").  We discern no reason to extend the rule articulated in *Rodriguez* to indemnification suits brought pursuant to 49 U.S.C. § 14706(b).   Mercer has not provided this court with a citation to a single case in which the *Rodriguez* rule was extended to an indemnification suit brought pursuant to the Carmack Amendment and has failed to advance any argument why the rule should be so extended or why such suits should not be governed by traditional burdens of proof.

Accordingly, we conclude that the district court erred when it determined that Greentree was liable for the damage to the aerial lifts simply because Lanxon's truck bore Greentree's placards at the time of the accident.  Because the parties concede that disputed issues of material fact exist as to whether Greentree is liable under either 49 U.S.C. § 14706(a) or 49 U.S.C. §14706(b), we **reverse**

the district court's grant of summary judgment to Mercer on liability and **vacate** its ruling on damages.  This matter is **remanded** to the district court for further proceedings not inconsistent with this opinion.